UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JONATHAN L. PURNELL,

                Petitioner,              Case No. 1:24-cv-656

v.                            Honorable Jane M. Beckering

GARY MINIARD,

                Respondent.

_____/

## OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jonathan L. Purnell is incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. On March 8, 2016, following a jury trial in the Ingham County Circuit Court, Petitioner was convicted of one count of assault with intent to do great bodily harm less than murder (AWIGBH), in violation of Mich. Comp. Laws § 759.84. The trial court initially sentenced Petitioner as a third-offense habitual offender, Mich. Comp. Laws § 769.11, to serve 10 to 20 years in prison. However, on October 24, 2018, the trial court resentenced Petitioner, as a third-offense habitual offender, to a term of 8 years, 4 months to 20 years.

      On June 24, 2024, Petitioner filed his habeas corpus petition raising the following seven grounds for relief:

      I.      The trial court violated [Petitioner's] constitutional right to equal protection of the law by erroneously enhancing [Petitioner's] sentence based upon the Court[']s personal findings and belief that [Petitioner] made an unsafe community for her "the Judge[']s" own children. Furthermore[,] [Petitioner's] due process rights were violated by the sentencing enhancement of the court based on facts[] never decided by the jury or

considered or decided beyond a reasonable doubt during trial. Equally[] important[,] [Petitioner's] due process rights were further violated by the prosecutors' tactical delay in charging the [Petitioner].

II.    During resentencing the trial court failed to articulate on the record an adequate reason to justify depart[ing] from the sentencing guidelines range recommendation of a minimum of 29[] months to 84[] months.

III.    The sentence of 100 to 240 months for a weapon[less] prison fight where prison disciplinary policy maximum sentence for fighting assault is 30 days detention[] is an offspring of the doctrine against cruel and unusual punishment[.]

IV.    [Petitioner] was deprived of his constitutional right to the effective assistance of trial counsel when counsel failed to subpoena eyewitnesses to testify that [Petitioner's] actions were motivated by fear rather than aggression. Trial counsel should have requested that a lesser included offense of simple assault instruction should have been read to the jury.

V.    Counsel erroneously advised [Petitioner] that if convicted by jury, [Petitioner] could only receive a 1-year minimum sentence. This advice fell [far] below an objective standard of reasonableness.

VI.    [Petitioner's] constitutional right to equal protection and due process was violated when the trial court failed to issue [an] adequate and compelling explanation of applying [Offense Variable (OV)] 19.

VII.    Defendant has satisfied good cause and actual prejudice.

(Pet., ECF No. 1, PageID.2, 4, 5, 6, 7, 9, 10.) Respondent contends that Petitioner's grounds for relief are meritless.[1] (ECF No. 6.) For the following reasons, the Court concludes that Petitioner

---

[1] Respondent also contends that some of Petitioner's grounds for relief are procedurally defaulted. (ECF No. 6, PageID.120.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix, 520 U.S. at 525; Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather

has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

### Discussion

#### I.    Factual Allegations

As the Michigan Court of Appeals stated, Petitioner's conviction "resulted from [Petitioner's] assault on another prisoner, Mark Carpenter, while residing at the Ingham County Jail awaiting disposition of a previous unrelated charge." *People v. Purnell*, No. 333288, 2017 WL 3397402, at *1. Carpenter sustained "serious injury including the loss of sight in one eye." *People v. Purnell*, No. 346649, 2019 WL 6340965, at *1 (Mich. Ct. App. Nov. 26, 2019).

Jury selection for Petitioner's trial occurred on March 7, 2016. (Trial Tr. I, ECF No. 7-4.) Over the course of two days, the jury heard testimony from Carpenter, three employees of the Ingham County Sheriff's Office, and Petitioner himself. (Trial Tr. I & II, ECF Nos. 7-4, 7-5.) On March 8, 2016, after about an hour of deliberation, the jury returned a guilty verdict. (Trial Tr. II, ECF No. 7-5, PageID.308.) Petitioner appeared before the trial court for sentencing on April 13, 2016. (ECF No. 7-6.)

Petitioner, with the assistance of appointed counsel, appealed his conviction and sentence to the Michigan Court of Appeals. Petitioner raised the following claims in a counseled brief: (1) the trial court erred by not instructing the jury regarding simple assault and battery; (2) the sentence imposed by the trial court was unreasonable, entitling Petitioner to resentencing; and (3) the trial court erred by sentencing Petitioner under the misconception that a consecutive sentence was required or, alternatively, was counsel ineffective for agreeing with the State that a consecutive sentence was mandatory. (ECF No. 7-10, PageID.421.) In a *pro per* supplemental brief, Petitioner

---

than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

raised the following claims for relief: (1) the trial court committed error and violated Petitioner's due process rights by refusing to instruct the jury on the lesser-included offense of aggravated assault; (2) the delay in charging Petitioner violated his due process rights; and (3) counsel rendered ineffective assistance. (*Id.*, PageID.386.)

On August 8, 2017, the court of appeals affirmed Petitioner's conviction but "remand[ed] for a redetermination regarding whether consecutive sentencing should apply." *Purnell*, 2017 WL 3397402, at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 3, 2018. *See People v. Purnell*, 908 N.W.2d 890 (Mich. 2018).

Petitioner appeared before the trial court for resentencing on October 24, 2018. (ECF No. 7-7.) The trial court sentenced Petitioner to 8 years, 4 months to 20 years with credit for 1,155 days. (*Id.*, PageID.325.) The trial court ordered that the sentence be served "consecutive to the one that Judge Draganchuk imposed on 14-1259-FH." (*Id.*)

Petitioner, through appointed counsel, appealed his new sentence to the Michigan Court of Appeals, arguing that the trial court erred by failing to articulate on the record its reasons for imposing a consecutive sentence. (ECF No. 7-12, PageID.545.) The court of appeals affirmed the resentencing on November 26, 2019. *See Purnell*, 2019 WL 6340965, at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on May 26, 2020. *See People v. Purnell*, 943 N.W.2d 123 (Mich. 2020).

On April 9, 2020, shortly before the supreme court denied leave to appeal, Petitioner returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.502. (ECF No. 7-8.) Before the trial court ruled on that motion, Petitioner filed a § 2254 petition with this Court. On May 12, 2021, the Court dismissed that § 2254 petition without

prejudice for failure to exhaust available state-court remedies. *See Purnell v. Rewerts*, No. 1:21-cv-324, 2021 WL 1904340, at *1 (W.D. Mich. May 12, 2021).

The trial court denied Petitioner's Rule 6.502 motion in an order entered on May 23, 2022. (ECF No. 7-9.) On January 4, 2023, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 7-14, PageID.566; ECF No. 7-15, PageID.612.) The Michigan Supreme Court denied Petitioner's application for leave to appeal on August 22, 2023. (ECF No. 7-15, PageID.612.) The instant § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

III.    **Discussion**

A.    **Grounds IV and V—Ineffective Assistance of Counsel**

Petitioner raises claims of ineffective assistance of counsel in grounds IV and V. In ground IV, Petitioner faults trial counsel for failing to subpoena "eyewitnesses to testify that [Petitioner's] actions were motivated by fear rather than aggression." (Pet., ECF No. 1, PageID.6.) Petitioner also suggests that counsel should have asked the trial court to instruct the jury on the lesser-included offense of simple assault. (*Id.*) In ground V, Petitioner avers that counsel erroneously told him that if convicted by jury, he could "only receive a 1-year minimum sentence." (*Id.*, PageID.7.)

1.    **Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

8

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA" (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised ineffective assistance claims both on direct appeal and in his Rule 6.502 motion. On direct appeal, the court of appeals addressed Petitioner's claims under the following standard:

> A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. U.S. Const., Am. VI; Const. 1963 art. 1, § 20. This right to counsel encompasses the right to the effective assistance of counsel. *People v. Cline*, 276 Mich. App. 634, 637; 741 N.W.2d 563 (2007). In order to succeed on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *People v. Taylor*, 275 Mich. App. 177, 186; 737 N.W.2d 790 (2007). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v. Rodgers*, 248 Mich. App. 702, 714; 645 N.W.2d 294 (2001).

*Purnell*, 2017 WL 3397402, at *5. Although the court of appeals cited state law, the standard is identical to the one set forth in *Strickland*. The trial court addressed Petitioner's claims under the following standard:

> To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different. *People v. Carbin,* 463 Mich. 590, 600 (2001), citing *Strickland .v Washington*, 466 U.S. 668, 687 (1984); *People v. Swain,* 288 Mich. App. 609, 643 (2010).

(ECF No. 7-9, PageID.353–354.)

The state courts' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our

> clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the state courts applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determinations regarding Petitioner's ineffective assistance claims are unreasonable applications of *Strickland* or if the state courts' resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

### 2.    Ground IV—Failure to Subpoena Eyewitnesses and Request Jury Instruction

#### a.    Failure to Subpoena Eyewitnesses

In ground IV, Petitioner faults counsel for not subpoenaing eyewitnesses to testify that Petitioner's actions "were motivated by fear rather than aggression." (Pet., ECF No. 1, PageID.6.) Petitioner raised this ground both on direct appeal and in his Rule 6.502 motion. On direct appeal, the court of appeals rejected Petitioner's argument, stating:

> [Petitioner] argues that his trial counsel should have interviewed and called other witnesses. He mentions three specific witnesses. However, it does not appear that [Petitioner's] trial counsel was unaware of this evidence because he informed the trial court that he could call the three witnesses as defense witnesses if necessary. Because [Petitioner] does not specify what these three witnesses would have said, and it appears that trial counsel was aware of them and their possible testimony, [Petitioner] has not demonstrated that the failure to call them was not a matter of trial strategy as opposed to the failure to investigate or present a defense.
>
> [Petitioner] also argues that his counsel failed to interview a witness to the fight who would have testified that Carpenter taunted [Petitioner] for his refusal to pay him and gestured to [Petitioner] as he asked guards to open his cell so they could fight, and that Carpenter reached towards [Petitioner's] legs while on the ground and threatened him. [Petitioner] provided this Court with an affidavit from the witness.
>
> The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004). "A substantial defense is defined as one that might have made a difference in the outcome of the trial." *In re Ayres*, 239 Mich. App. 8, 22; 608 N.W.2d 132 (1999). [Petitioner] was not denied a defense by the absence of this witness because [Petitioner] presented similar testimony that

Carpenter taunted him and fought him from the ground. In addition, this witness stated in his affidavit that he did "not believe [Petitioner] intended to hit" Carpenter, whereas [Petitioner] himself testified that he "swung" on Carpenter in order to prevent Carpenter from having an "advantage" over [Petitioner]. Given the extremely strong case against [Petitioner] (with testimony from the guards and from Carpenter), we cannot find that [Petitioner] was deprived of a substantial defense by the absence of a witness who might have presented cumulative or contradictory testimony.

*Purnell*, 2017 WL 3397402, at *5. The trial court also rejected Petitioner's argument, stating:

Fourth, [Petitioner] argues he was deprived of his Constitutional right to the effective assistance of counsel when his trial counsel failed to subpoena eyewitnesses to testify that [Petitioner's] actions were motivated by fear rather than aggression. [Petitioner] alleges there is an affidavit from an eyewitness, saying the victim pump faked at [Petitioner] before the assault. According to [Petitioner], the attorney never contacted the witnesses, which he argues demonstrates ineffective assistance of counsel.

. . . First, [Petitioner] failed to provide the described affidavit to this Court. Second, [Petitioner] did not demonstrate that the decision not to call the witness was anything other than sound trial strategy. Therefore, [Petitioner] has not met the steep burden required to show ineffective assistance of counsel.

(ECF No. 7-9, PageID.353–354.)

As an initial matter, although Petitioner mentions "eyewitnesses" in his § 2254 petition, he focuses only on counsel's failure to call one witness, Kristofferson Thomas. (Pet., ECF No. 1, PageID.38.) Thus, to the extent Petitioner faults counsel for not calling other unnamed witnesses, Petitioner offers no evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded to the state courts' factual determinations. Notably, Petitioner provides no evidence that any unnamed witnesses were even available to testify at his trial, and he offers nothing but his own assertions to support a conclusion that a failure to present their testimony resulted in prejudice to his defense. *See Tinsley v. Million,* 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he

12

testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)).

With respect to Kristofferson Thomas, Petitioner contends that Thomas would have testified "showing that the victim pump faked a swing at [Petitioner] and threatened [Petitioner] prior to the arrival of the deputies after the fact." (Pet., ECF No. 1, PageID.38.) Petitioner suggests that Thomas' testimony would have had an impact on the jury's verdict. (*Id.*, PageID.39.)

Petitioner included an affidavit from Thomas as part of his *pro per* supplemental brief on direct appeal. The affidavit is dated November 28, 2016. (ECF No. 7-10, PageID.419.) In the affidavit, Thomas stated that Carpenter "called for the deputy to open his cell door so they could fight." (*Id.*, PageID.418.) Thomas set forth that Carpenter "made a pump fake" at Petitioner, and Petitioner "looked worried." (*Id.*) Thomas "thought [Carpenter] was about to strike Petitioner, but "[b]efore [he] knew it, [Petitioner] had hit [Carpenter]." (*Id.*) Carpenter fell and "hit his head on the edge of the table seat." (*Id.*) Thomas set forth that during the fight, Carpenter threatened to kill Petitioner. (*Id.*)

Thomas states that he was interviewed by a deputy sergeant about the incident and initially stated that he did not know anything. (*Id.*, PageID.419.) When the deputy said that Thomas was lying, Thomas "told him everything [he] witnessed." (*Id.*) According to Thomas, the deputy told him that "someone would contact [him] later about [his] statement. No one ever contacted [him]." (*Id.*) Thomas avers that he did not believe that Petitioner intended to hit Carpenter and that "[e]verything just happened all of a sudden." (*Id.*) Thomas thought that Carpenter "would have

beaten up [Petitioner] if he hadn't acted." (*Id.*) Finally, Thomas indicated that he had been available at all times as a witness, but that no attorney contacted him about the incident. (*Id.*)

Petitioner has not demonstrated that Thomas's testimony would have changed the outcome of his trial. First, the Court notes that Thomas waited several months until after Petitioner's trial and sentencing to prepare and sign this affidavit. If Thomas believed that Petitioner "had been wrongly convicted and was languishing in prison, why wait?" *Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). This affidavit, which was created well after trial, is simply not sufficiently reliable to suggest that Thomas's testimony would have led to an acquittal. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x at 528, 531–32 (11th Cir. 2009).

Moreover, as the court of appeals properly noted, Thomas's purported testimony would have been cumulative or contradictory to the testimony provided by Petitioner. At trial, Petitioner testified that Carpenter taunted him and continued to fight Petitioner from the ground. (Trial Tr. II, ECF No. 7-5, PageID.292–294.) Any similar testimony by Thomas would have been cumulative of the testimony given by Petitioner, and the Supreme Court has held that counsel cannot be ineffective if the evidence that counsel failed to offer "can reasonably be expected to be only cumulative." *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009). Furthermore, Petitioner testified that while Carpenter was talking and spitting in Petitioner's face, Petitioner "justified the only thing [he] could do was swing on him instead of going in the room and giving [Carpenter] an advantage on [him]." (Trial Tr. II, ECF No. 7-5, PageID.292.) Any testimony by Thomas regarding his belief that Petitioner did not intend to hit Carpenter would have been contradictory to Petitioner's own version of events.

Overall, the State presented substantial evidence to support Petitioner's conviction, including testimony from three deputies and Carpenter himself. In light of that testimony, the Court

cannot agree with Petitioner that counsel's failure to call Thomas as a witness prejudiced his defense in any way. Petitioner, therefore, is not entitled to relief with respect to this portion of ground IV.

### b.    Failure to Request Jury Instruction

Petitioner also faults counsel for failing to request that the trial court instruct the jury on the lesser-included offense of simple assault. (Pet., ECF No. 1, PageID.6.) In his brief in support, Petitioner also mentions that counsel should have requested an aggravated assault instruction. (*Id.*, PagID.40.) Petitioner suggests a reasonable probability that the jury would have found him guilty of simple assault had trial counsel requested that instruction. (*Id.*, PageID.43.)

In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court explored the possible outcomes that might follow from giving—or failing to give—a lesser-included offense instruction. The *Keeble* Court acknowledged the potential benefit that Petitioner claims was denied to him at trial:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Keeble*, 412 U.S. at 212–13; *see also Beck v. Alabama*, 447 U.S. 625, 634 (1980) (noting that "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard").

The Sixth Circuit has considered similar claims from habeas petitioners in numerous opinions. For example, the Sixth Circuit has held that counsel was not ineffective for failing to request a lesser-included manslaughter instruction in a situation where the petitioner and defense counsel's primary defense theory was that the petitioner was not the one who shot the victim. *See Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005). The Sixth Circuit has also declined to find ineffective assistance of counsel where counsel's failure to request a lesser-included voluntary manslaughter instruction was consistent with the defendant's effort to seek a full acquittal on the basis of self-defense. *See Lewis v. Russell*, 42 F. App'x 809, 810–11 (6th Cir. 2002). Similarly, in *Edwards v. Mack*, the Sixth Circuit concluded that counsel was not ineffective for waiving jury instructions for lesser-included offenses where counsel and the defendant hoped to obtain an acquittal on the murder charge. *See Edwards v. Mack*, 4. F. App'x 215, 217–18 (6th Cir. 2001). Overall, the Sixth Circuit has concluded that such a "high risk, high reward" strategy is reasonable when there is sufficient evidence in the record to support a chance of acquittal. *See Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017); *see also Harrop v. Sheets*, 430 F. App'x 500, 507 (6th Cir. 2011) (discussing that counsel could have reasonably decided not to request a lesser offense instruction because such an instruction "would have diluted the other arguments [counsel] was advancing to the jury").

Contrary to Petitioner's argument, however, counsel did request that the trial court instruct the jury on lesser-included offenses. (Trial Tr. II, ECF No. 7-5, PageID.297.) Counsel argued that those instructions were proper because the testimony demonstrated that there "[was not] an intent

16

to do the harm and it was an intent to, I guess, resolve a jail dispute or a jail fight." (*Id.*) Counsel argued that it should be up to the jury to determine "whether or not that was assault or a great bodily harm assault." (*Id.*) The trial court responded that it would not allow the lesser-included offenses instructions. (*Id.*) The prosecutor argued that aggravated assault was not applicable in the circumstances, and that a rational view of the evidence did not support a conviction for assault and battery, a "necessary lesser of great bodily harm." (*Id.*) The record, therefore, supports a conclusion that counsel requested the lesser-included instructions that Petitioner now suggests he failed to request. Counsel cannot be deemed ineffective based upon the fact that the trial court denied counsel's motion regarding the lesser-included jury instructions.

Moreover, to the extent that Petitioner suggests that the trial court erred by not instructing the jury regarding lesser-included offenses, the Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle v. McGuire*, 502 U.S. at 62, 75 (1991) (concluding that erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement

of the law." *Henderson*, 431 U.S. at 155. If Petitioner fails to meet this burden, he fails to show

that the jury instructions were contrary to federal law. *Estelle*, 502 U.S. at 75.

Here, the Michigan Court of Appeals rejected Petitioner's argument that the jury

instructions in question should have been given:

> Initially, we note that [Petitioner] admits that aggravated assault is a *cognate* lesser offense of AWIGBH (it has an element not included in AWIGBH). [Petitioner] cites outdated case law in stating that an instruction on aggravated assault was warranted. The Michigan Supreme Court has ruled that MCL 768.32(1) permits instruction only on *necessarily* included lesser offenses. *Mendoza*, 468 Mich. 533.

> Assault and battery, MCL 750.81, is clearly a necessarily included lesser offense of AWIGBH. Thus, a lesser-included offense instruction would have been appropriate if "a rational view of the evidence would support such an instruction." *Mendoza*, 468 Mich. at 541. The evidence must be sufficient, "more than a modicum," that [Petitioner] could have been convicted of the lesser offense. *See People v. Cheeks*, 216 Mich. App. 470, 479–480; 549 N.W.2d 584 (1996).

> The intention of the defendant is what "distinguishes the misdemeanors, simple assault and aggravated assault," from the felony, AWIGBH. *People v. Van Diver*, 80 Mich. App. 352, 356; 263 N.W.2d 370 (1977). The intent to do great bodily harm less than murder is "an intent to do serious injury of an aggravated nature." *People v. Stevens*, 306 Mich. App. 620, 628; 858 N.W.2d 98 (2014) (quotation marks and citations omitted). Here, [Petitioner] testified that he "didn't try to hurt [Carpenter], like, his eyesight or—none of that stuff." However, when evaluated with the evidence as a whole, this testimony was not "more than a modicum" of evidence that [Petitioner] did not intend to commit serious harm against Carpenter and, instead, intended only to place him in reasonable apprehension of receiving an immediate battery, or to inflict less than serious injury of an aggravated nature. Even though [Petitioner] stated that he did not mean to seriously harm Carpenter, he explained to a police officer that because he did not get paid for a gambling debt, he punched Carpenter, Carpenter got immediately knocked out, and [Petitioner] then continued to punch him. [Petitioner] reported at trial that he wished to take the first swing to get the advantage. [Petitioner] denied at trial that Carpenter immediately became unconscious, but he admitted that he kicked Carpenter in the head after Carpenter was on the ground. Corrections Officer James Matthews observed [Petitioner] punch and kick a motionless Carpenter while standing over him, and then take a couple steps away and return to kick Carpenter in the head. Corrections Officer Matthew Powell witnessed [Petitioner] initiate punching Carpenter in the face, causing Carpenter to fall to the ground against a glass barrier, where [Petitioner] continued to hit a bleeding and immobilized Carpenter in the head with his fist and then kicked him in the head. Carpenter sustained numerous serious injuries, including a detached retina.

18

A defendant's intent may be inferred "from his words or from the act, means, or the manner employed to commit the offense." *People v. Hawkins*, 245 Mich. App. 439, 458; 628 N.W.2d 105 (2001) (citation omitted). The injuries sustained by the victim are also relevant. *People v. Dillard*, 303 Mich. App. 372, 378; 845 N.W.2d 518 (2013), reversed on other grounds 500 Mich. 14 (2017). The evidence here indicated that [Petitioner's] intent was to seriously injure Carpenter. Any rational view of the evidence did not support an instruction on simple assault and battery, and we find no basis for reversal.

*Purnell*, 2017 WL 3397402, at *2.

Notably, the Supreme Court has never held that failure to give a lesser included offense instruction in a noncapital case, such as Petitioner's, violates due process. For that reason, the Sixth Circuit Court of Appeals consistently rejects the argument Petitioner raises. *See, e.g.*, *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) (where the petitioner requested involuntary manslaughter instruction, the court held that "[b]ecause the Supreme Court has never held that due process requires lesser-included-offense instructions in a non-capital case, McMullan's claim rests on no such federal ground. Therefore, his claim fails."); *Dansby v. Trombley*, 369 F. App'x 657, 660 (6th Cir. 2010) (where the petitioner sought voluntary manslaughter and involuntary manslaughter instructions in addition to first-degree and second-degree murder instructions, the court determined that, in a noncapital case, the petitioner's challenge fell outside the purview of the AEDPA); *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) ("[The failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]"). Because Petitioner fails to identify any clearly-established federal law that requires lesser-included instructions in noncapital cases, he cannot show that the court of appeals' decision was contrary to, or an unreasonable application of, clearly established federal law.

For the foregoing reasons, Petitioner is not entitled to habeas relief with respect to this portion of ground IV.

### 3.    Ground V—Erroneous Advice Regarding Minimum Sentence

In ground V, Petitioner contends that counsel erroneously advised him "that if convicted by jury, [Petitioner] could only receive a 1-year minimum sentence." (Pet., ECF No. 1, PageID.7.) Petitioner avers that if he had known that he "could receive a 10-year minimum upon conviction[, he] would have accepted the plea offer." (*Id.*, PageID.44.) Essentially, Petitioner suggests that he "was misinformed about the benefits" of the plea offer. (*Id.*, PageID.45.) Petitioner argues that if he had "been aware of the true maximum possible sentence that was ultimately imposed[, he] would likely have entered into the plea agreement." (*Id.*, PageID.46.)

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

The record reflects that prior to jury selection, the prosecutor informed the trial court that "there has been an offer extended to this defendant." (Trial Tr. I, ECF No. 7-4, PageID.245.) The prosecutor noted that "any conviction and sentence on this case is mandatory consecutive times." (*Id.*) The prosecutor set forth that the offer "is a fixed minimum of 24 months in the [MDOC] for count one, assault with intent to do great bodily harm less than murder." (*Id.*)

After Petitioner was placed under oath, counsel proceeded to voir dire him regarding the offer. (*Id.*) Petitioner acknowledged that counsel had spoken to him about the offer and had reviewed the sentencing guidelines with him. (*Id.*) When counsel asked if Petitioner wanted to proceed to trial and not take the plea offer, Petitioner responded, "Yes, sir." (*Id.*) In response to the trial court's questions, Petitioner indicated that he was satisfied with counsel and that no one had forced, threatened, or coerced him to make this decision. (*Id.*) Petitioner acknowledged that he was making the decision "with a clear mind and fully informed after discussions with [his] counsel." (*Id.*)

Petitioner raised ineffective assistance claims related to plea negotiations during direct appeal and in his Rule 6.502 motion. On direct appeal, Petitioner included an affidavit as part of his *pro per* supplemental brief. Within that affidavit, Petitioner stated:

> During a 5-10 minute visit at pre-trial conference, Mr. Cornish met with me and conveyed a plea offer. The plea bargain was for eighteen months, with a mandatory consecutive sentence to my other conviction. I asked him what was the worst case scenario. He said why take 1 ½ [years] when the evidence, at most, was only sufficient to convict of aggravated assault, a 1 [year] misdemeanor. I rejected the plea bargain based upon his experience and advice.

(ECF No. 7-10, PageID.413.) The Michigan Court of Appeals rejected Petitioner's argument, stating:

> Here, the prosecutor stated before trial that he had offered [Petitioner] a minimum sentence of 24 months with consecutive sentencing. [Petitioner] reports that his trial counsel informed him at a pretrial conference that the prosecutor had offered an 18–month consecutive term and that his counsel believed that he could, at most, be convicted of an aggravated assault misdemeanor. [Petitioner] argues that he rejected the plea offer because it included consecutive sentencing. It is true that [Petitioner's] trial counsel was mistaken that a statute required a consecutive sentence. However, the *prosecutor* extended the offer that included consecutive sentencing and also believed, as did the trial court, that consecutive sentencing was mandatory. Even had [Petitioner's] trial counsel challenged the prosecutor's offer of consecutive sentencing, there was no indication that the prosecutor would have offered concurrent sentencing, particularly when [Petitioner] was already serving a 66–month sentence for transporting a prostitute. It is not likely that the prosecutor would offer a sentence that would not have extended [Petitioner] time in prison. Additionally, it is questionable whether the trial court would have accepted a deal that resulted in no additional prison time after [Petitioner] completed his previous sentence. There is insufficient evidence that the advice provided by [Petitioner's] trial counsel during plea negotiations prejudiced [Petitioner].

*Purnell*, 2017 WL 3397402, at *6. In its order denying Petitioner's Rule 6.502 motion, the trial court stated:

> Fifth, [Petitioner] argues that his counsel was ineffective by failing to advise [sic] him that he could only receive a 1-year minimum sentence if convicted by a jury. [Petitioner] asserts if he had known that he could receive a 10-year minimum upon conviction, then he would have accepted the plea offer. Again, [Petitioner] has not met the high burden of prevailing on a claim of ineffective assistance of counsel. Specifically, [Petitioner] failed to provide any supporting information regarding his accusation against trial counsel. Accordingly, [Petitioner] has not demonstrated ineffective assistance of counsel.

(ECF No. 7-9, PageID.354.) The facts as found by the states courts are presumed to be correct, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

Petitioner offers nothing to rebut the state courts' factual determinations. As set forth above, Petitioner explicitly indicated, under oath, that he wanted to reject the offer provided by the prosecution and proceed to trial. The record is devoid of any indication that at any time prior to

sentencing, or even at sentencing, Petitioner spoke up and advised the trial court that he had rejected the plea offer based upon faulty advice from counsel that Petitioner would receive a 1-year minimum sentence. Moreover, the affidavit that Petitioner submitted to the court of appeals, and upon which he presumably relies to support this ground for relief, was devoid of any information concerning when his conversation with counsel occurred, why counsel believed the evidence, at most, supported an aggravated assault misdemeanor conviction, and why counsel thought that Petitioner would receive only one year if convicted of aggravated assault. While it is apparent that Petitioner regrets not taking a plea offer, hindsight is 20/20, and Petitioner's conclusory, self-serving statements, without any further supporting evidence, cannot afford him relief.

In short, Petitioner has failed to show that the state courts' rejection of his ineffective assistance claim premised upon counsel's alleged erroneous advice regarding plea negotiations is contrary to, or an unreasonable application of, *Strickland*, *Hill*, or *Lafler*. Petitioner, therefore, is not entitled to relief with respect to ground V.

**B.      Grounds Asserting Sentencing Issues**

Several of Petitioner's grounds for relief assert constitutional violations that allegedly occurred during sentencing. In ground I, Petitioner contends that the trial court violated his equal protection rights by enhancing his sentence based upon the court's "personal findings and belief that [Petitioner] made an unsafe community for her . . . own children." (Pet., ECF No. 1, PageID.2.) Petitioner suggests further that his due process rights were violated when the trial court enhanced his sentence based upon facts "never decided by the jury or considered or decided beyond a reasonable doubt during trial." (*Id.*) In ground II, Petitioner argues that the trial court failed to articulate an adequate reason for departing from the sentencing guidelines recommended range at resentencing. (*Id.*, PageID.4.) In ground III, Petitioner suggests that his sentence violates the

Eighth Amendment's proscription against cruel and unusual punishment. (*Id.*, PageID.5.) In ground VI, Petitioner avers that the trial court violated his due process and equal protection rights by failing to "issue an[] adequate and compelling explanation [for] applying . . . OV 19." (*Id.*, PageID.9.) The Court considers each of these grounds in turn below.

### 1.    Ground I—"Judge Found" Facts

As part of ground I, Petitioner contends that the trial court violated his due process and equal protection rights by enhancing his sentence based upon facts that were "never decided by the jury or considered or decided beyond a reasonable doubt during trial." (*Id.*, PageID.15.) Specifically, Petitioner takes issue with the trial court's finding that Petitioner made an unsafe community for children, including the judge's own children. (*Id.*)

> Petitioner raised this issue in his Rule 6.502 motion, and the trial court rejected it, stating:

> First, [Petitioner] alleges that his Constitutional Rights to Equal Protection and Due Process of Law were violated. More specifically, he alleges that this Court erroneously enhanced his sentence without providing adequate reasoning. However, [Petitioner's] Constitutional Rights to Equal Protection and Due Process were not violated by this Court. "Resentencing will be required when a sentence is determined unreasonable." *People v. Lockridge*, 498 Mich. 358, 392 (2015). The reasonableness of a sentence is determined by evaluating whether it violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v. Steanhouse*, 313 Mich. App. 1, 45 (2015). In *Purnell*, the Court of Appeals already determined that this Court's sentence was reasonable based on [Petitioner's] lack of respect for human life and dignity. *People v. Purnell*, unpublished opinion of the Court of Appeals, issued Aug. 8, 2017 (Docket No. 333288). Particularly, the Michigan Court of Appeals stated that this Court's "comments reasonably imply that the court concluded that the defendant had a poor potential for rehabilitation, given that he was in a controlled environment and still committed the crime." *Id.* Therefore, as stated by the Michigan Court of Appeals, the sentence was proportional and did not violate [Petitioner's] rights to Equal Protection and Due Process of Law.

(ECF No. 7-9, PageID.351–352.)

In his § 2254 petition, Petitioner cites *Alleyne v. United States*, 570 U.S. 99 (2013), as support for his claim. In *Alleyne*, decided in 2013, the United States Supreme Court held that "any

fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 103. Thus, "mandatory minimum sentences may only be increased on the basis of facts found by a jury or admitted by a criminal defendant." *Robinson v. Woods*, 901 F.3d 710, 712 (6th Cir. 2018).

In 2015, the Michigan Supreme Court concluded that Michigan's sentencing scheme ran afoul of the *Alleyne* decision. *See People v. Lockridge*, 870 N.W.2d 502, 509 (Mich. 2015). The Michigan Supreme Court reached that conclusion after finding that the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [ ] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Id.* at 506 (emphasis in original).[2] The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520–21 (relying on *United States v. Booker*, 543 U.S. 220, 264– 65 (2005), and holding that the remedy for the unconstitutionality of the mandatory sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness).

Here, Petitioner was resentenced on October 24, 2018, well after *Alleyne* and *Lockridge* were decided. Thus, any suggestion by Petitioner that his post-*Lockridge* sentence is the product of mandatory guidelines is plainly wrong. Because the Michigan guidelines are advisory only, the trial court's determination of Petitioner's minimum and maximum sentences upon resentencing

---

[2] On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson*, 901 F.3d at 710. The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111–12).

was purely discretionary. *See, e.g.*, *Torres v. Rewerts*, No. 18-1935, 2018 WL 7317219, at *2 (6th Cir. Dec. 19, 2018) (noting that, where a petitioner is sentenced after *Lockridge*, "it may be presumed that the sentencing court used an advisory sentencing scheme rather than the mandatory scheme . . .") Moreover, after *Lockridge*, "a trial court's imposition of a sentence, no matter how it may be guided by the sentencing guidelines, represents an exercise of the court's discretion." *Fitzgerald v. Trierweiler*, No. 1:17-cv-435, 2017 WL 2790710, at *7 (W.D. Mich. June 28, 2017). In Petitioner's case, therefore, the trial court's imposition of sentence at the resentencing was an exercise of discretion, and any facts that the trial court "may have found in support of its exercise of discretion do not implicate the Sixth Amendment." *See id.* Any contention by Petitioner that his sentence was based on judge-found facts, therefore, does not raise a federal constitutional claim. *See Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."); *United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014) ("But both *Apprendi* and *Alleyne* took care not to disturb the district court's discretionary fact-finding in other circumstances . . . . Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury." (internal citation omitted)).

Accordingly, for the reasons set forth above, Petitioner is not entitled to relief with respect to this portion of ground I.

### 2.    Ground II—Failing to Articulate Reasons for Sentence

Next, as ground II, Petitioner faults the trial court for not adequately explaining its reasoning, at resentencing, for both departing from the sentencing guidelines' recommendation of a minimum sentence between 29 to 84 months, as well as for again imposing a consecutive sentence. (Pet., ECF No. 1, PageID.25–30.)

Petitioner raised his assertion regarding the trial court's alleged failure to sufficiently articulate its reasoning for imposing a consecutive sentence on appeal from his resentencing, and the Michigan Court of Appeals rejected his argument pursuant to state law. *See Purnell*, 2019 WL 6340965, at *1–2. Petitioner then raised his claim regarding the trial court's failure to adequately explain its departure from the guidelines in his Rule 6.502 motion, suggesting that the trial court violated the standard set forth in *People v. Skinner*, 502 Mich. 89 (2018). (ECF No. 7-9, PageID.352.) The trial court rejected that argument. (*Id.*)

With respect to Petitioner's challenge to the application of a consecutive sentence, "the application of state sentencing laws governing consecutive sentencing does not present a federal constitutional question but merely an issue of state law which is not cognizable on habeas review." *Hoffman v. Tribley*, No. 13-10868, 2013 WL 1137353, at *2 (E.D. Mich. Mar. 19, 2013); *see also Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998) (holding that although the trial court may have violated a state criminal rule in changing the petitioner's sentence from concurrent to consecutive sentences in his absence, "this error does not . . . constitute a violation of procedural due process of law," but rather is an alleged violation of state law "that is not cognizable in a federal habeas corpus proceeding"); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding"). Likewise, Petitioner had "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Thus, to the extent Petitioner believes that the trial court failed to adequately set forth its reasoning from department from the minimum sentence recommendations, that in itself is not a basis for federal habeas corpus relief. *See Koras v. Robinson*, 123 F. App'x 207, 214 (6th Cir.

2005). In any event, both the court of appeals and the trial court properly rejected Petitioner's arguments, as the transcript of Petitioner's resentencing reflects thorough reasoning set forth by the trial court. (ECF No. 7-7, PageID.323–325.)

The Court recognizes that an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras*, 123 F. App'x at 213 (quoting *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). A federal habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking." *Doyle*, 347 F. Supp. 2d at 485 (citation omitted). A sentence may also violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

As discussed *infra* in Part III.B.3, Petitioner's sentence is not so disproportionate to the crime as to be arbitrary or shocking. Likewise, Petitioner does not identify any "false" information that was before the sentencing court and, therefore, fails to demonstrate that his sentence was based upon material misinformation of constitutional magnitude and, for that reason, violates due process. *See, e.g.*, *Brown v. Rewerts*, No. 19-1771, 2020 WL 8073624, at *2 (6th Cir. Sept. 1, 2020) (noting that "Brown failed to identify any facts found at sentencing that were based on materially false information[; therefore, r]easonable jurists would agree that Brown's claim

regarding the trial court's compliance with Michigan's scoring process and the resulting sentencing guidelines calculation asserts only a matter of the application of state sentencing laws").

Therefore, for the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground II.

### 3.     Ground III—Cruel and Unusual Punishment

In ground III, Petitioner suggests that his sentence violates the Eighth Amendment's proscription against cruel and unusual punishment. (Pet., ECF No. 1, PageID.5.) Specifically, Petitioner contends that his sentence of 8 years, 4 months to 20 years violates the Eighth Amendment because "prison disciplinary policy maximum sentence for fighting assault is 30 days detention." (*Id.*) Petitioner also suggests that his sentence is "unreasonable and disproportionate." (*Id.*, PageID.34.)

Petitioner raised his argument concerning disproportionality on direct appeal from his initial sentence, and the Michigan Court of Appeals denied it. *See Purnell*, 2017 WL 3397402, at *3–4. Petitioner reiterated his disproportionality argument, and raised his Eighth Amendment assertion, in his Rule 6.502 motion; those arguments were summarily dismissed by the trial court. (ECF No. 7-9, PageID.353.)

Here, Petitioner merely relies upon the arguments that were raised in—and rejected by—the state courts. The term "disproportionate" is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, Petitioner's claim that the trial court violated state sentencing guidelines or state sentencing

principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id.* at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law,

*see Wilson*, 562 U.S. at 5, Petitioner's claim based upon *Milbourn* and *Steanhouse* is not cognizable in this habeas corpus action.

Moreover, with respect to Petitioner's Eighth Amendment cruel and unusual punishment argument, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

Accordingly, for the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground III.

### 4.    Ground VI—OV 19

As ground VI, Petitioner avers that the trial court violated his due process and equal protection rights by failing "to issue an[] adequate and compelling explanation of applying . . . OV 19." (Pet., ECF No. 1, PageID.47.)

31

OV 19 addresses security threats to penal institutions or courts or interference with the administration of justice or emergency services. *See* Mich. Comp. Laws § 777.49. Under the statute, an offender receives 10 points if he or she "by his or her conduct threatened the security of a penal institution or court." *See id.* At Petitioner's resentencing, the prosecution noted that OV 19 had been scored at 25 points, and Petitioner's counsel objected to that scoring, noting that "[t]his was a jail fight." (ECF No. 7-7, PageID.320.) In response, the prosecutor argued that the fact that Petitioner assaulted another inmate at the Ingham County Jail "interfered with the security that was happening at the jail at the time." (*Id.*) The trial court agreed with the scoring of 25, stating:

> I agree, because when you're incarcerated, you need to—whether jail, prison, what have you, you need to follow the rules, and any time a fight breaks out that—it didn't lead here but it can lead to a riot, it leads to other safety issues. Certainly the jail personnel are at risk and certainly there was an inmate who suffered injuries, and that goes to the safety. There can be other people, then, who look at this and do their own violations saying he did it, I'm going to do it. There's so many levels that this causes security problems and risks. I think 25 is appropriate.

(*Id.*) Petitioner subsequently raised his due process and equal protection argument in his Rule 6.502 motion, and the trial court rejected it, stating that the court had "provided an adequate explanation for assessing the points." (ECF No. 7-9, PageID.355.)

As an initial matter, claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims that are typically not cognizable in federal habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner's challenge is, at its heard, a challenge to the trial court's scoring of OV 19. Therefore, it is not cognizable on federal habeas review. To avoid that limitation, Petitioner attempts to convert his claim into a federal constitutional claim in two ways: (1) the trial court scored OV 19

based upon facts that were not found by the jury; and (2) the scoring of OV 19 violated Petitioner's Sixth Amendment Confrontation Clause rights, and trial and appellate counsel were ineffective for not asserting that argument. (Pet., ECF No. 1, PageID.49–53.)

Petitioner's suggestion that the trial court violated his constitutional rights by scoring OV 19 based upon facts that were not found by a jury is premised upon Petitioner's reading of *Alleyne*. (*Id.*, PageID.50.) As set forth *supra*, Petitioner's reliance upon *Alleyne* is misplaced, as Petitioner was resentenced after both *Alleyne* and *Lockridge* were decided. Therefore, the trial court's scoring of OV 19 was an exercise of discretion, and any facts that the trial court "may have found in support of its exercise of discretion do not implicate the Sixth Amendment." *See Fitzgerald*, 2017 WL 2790710, at *7.

Petitioner also vaguely suggests that the trial court's scoring of OV 19 violated his Sixth Amendment Confrontation Clause rights because he did not receive an opportunity to confront his accuser. (Pet., ECF No. 1, PageID.53.) As an initial matter, Petitioner's contention that he did not receive an opportunity to confront his accuser is misplaced, as Petitioner, through counsel, received ample opportunity to cross-examine Carpenter and the various deputies who testified against him at trial. In any event, the Confrontation Clause's protections simply do not extend to sentencing hearings. *See United States v. Silverman*, 976 F.2d 1502, 1514 (6th Cir. 1992) (en banc) (discussing the "inapplicability of the Confrontation Clause to the sentencing procedure"). Because any assertion otherwise by trial and appellate counsel would have wholly lacked merit, counsel was not ineffective for failing to raise a Sixth Amendment Confrontation Clause challenge to the scoring of OV 19. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) (noting that "[n]o prejudice flows from the failure to raise a meritless claim").

Accordingly, for all the reasons set forth above, Petitioner is not entitled to relief with respect to habeas ground VI.

### C.    Due Process Violation—Delay in Charging

As part of ground I, Petitioner contends that his due process rights were violated "by the prosecutor['s] tactical delay in charging [him]." (Pet., ECF No. 1, PageID.2.) According to Petitioner, "[h]ad the prosecution brought [Petitioner] to trial in a timely manner[,] he would have been able to have several witnesses available to testify to the fact that the victim pump faked a punch, initiating the fight that led to [Petitioner's] conviction." (*Id.*, PageID.18.) Petitioner argues further that the delay caused him to not be able to hire an attorney of his choosing "as his funds had been diminished with his inability to earn an income while incarcerated and having to go through all of his savings in that length of time." (*Id.*, PageID.20.)

As the Supreme Court has stated, "[t]here is no constitutional right to be arrested." *Hoffa v. United States*, 385 U.S. 293, 310 (1966). The *Hoffa* Court went on to note:

> The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Id.* The Due Process Clause does provide some protection against preindictment delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977). However, the Supreme Court has explicitly noted that "no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." *Id.* at 792.

To demonstrate a due process violation due to preindictment delay, a petitioner must prove *both* substantial prejudice to his right to a fair trial *and* that the delay was intentionally imposed by the government to gain a tactical advantage. *See United States v. Brown,* 959 F.2d 63, 66 (6th

34

Cir. 1992). Without that showing, the prosecution of a defendant following an investigative delay does not amount to a deprivation of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco,* 431 U.S. at 796.

Petitioner raised his charging delay claim on direct appeal, and the Michigan Court of Appeals rejected it, stating:

> Next, [Petitioner] argues in a Standard 4 brief that the prosecutor violated [Petitioner's] due process rights by delaying charging him with a crime following his arrest. As an unpreserved claim, review is for plain error affecting substantial rights. *People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999).
>
> Due process guarantees protect a defendant from prearrest or preindictment delay after the defendant committed an offense. *People v. Cain*, 238 Mich. App. 95, 109; 605 N.W.2d 28 (1999). "A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process." *People v. Woolfolk*, 304 Mich. App. 450, 454; 848 N.W.2d 169 (2014).
>
> [Petitioner] was in jail for transporting a prostitute when he assaulted Carpenter on December 21, 2014. A complaint and felony warrant for AWIGBH were issued on March 3, 2015, and the preliminary examination was held on October 8, 2015, after being rescheduled three times. [Petitioner] waived his circuit court arraignment on October 14, 2015, and after a December pretrial conference, his trial began on March 7, 2016.
>
> Thus, there were 72 days between [Petitioner's] arrest on December 21, 2014, and the issuance of a felony warrant, 291 days between the arrest and the preliminary examination, and 297 days between the arrest and his waiver of arraignment in circuit court. A defendant must demonstrate "actual and substantial prejudice to his right to a fair trial" in order to establish a due process violation because of preindictment delay. *People v. Musser*, 259 Mich. App. 215, 220; 673 N.W.2d 800 (2003). Here, [Petitioner] argues that the delay could have caused a loss of memory of the details of the events by witnesses, including himself. However, [Petitioner] does not offer any specific instance of memory loss, and a "general claim that the memories of witnesses have suffered is insufficient to demonstrate prejudice." *Id.* [Petitioner] also argues that the delay prejudiced him because witnesses may have gone missing. However, [Petitioner] does not specify any witnesses that were missing, and "a defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence . . . ." *Woolfolk*, 304 Mich. App. at 454.
>
> [Petitioner] also argues that the prosecutor used the delay in order to enhance his sentence from the conviction in the preceding unrelated case, and to gain an advantage in plea negotiations. However, [Petitioner's] conviction that resulted in

an enhanced sentence was from an offense that occurred more than nine months before the AWIGBH. Because the prior charge was in the process of adjudication at the time of the AWIGBH, it was very likely to have been completed before the disposition of the instant case, despite any delay. The likelihood of it being available to use for enhancement suggests that this case was not purposefully delayed to take advantage of its availability. [Petitioner] has not established any actual prejudice from any delays, and because the reason for the delay is not clear given the lack of preservation, he has not established plain error.

*Purnell*, 2017 WL 3397402, at *4–5.

Upon review of the record, the court of appeals' conclusion is entirely consistent with and a reasonable application of clearly established federal law. Petitioner's suggestion that he was unable to have witnesses appear on his behalf because of the delay implicates the first prong set forth in *Brown*, that a petitioner must prove substantial prejudice to his right to a fair trial. *See Brown*, 959 F.2d at 66. However, as discussed *supra*, the Court has already concluded, as part of Petitioner's ineffective assistance claim, that he was not prejudiced by counsel not calling witnesses on his behalf. The only putative witness that Petitioner mentions by name is Kristofferson Thomas, and as noted above, Thomas's proposed testimony would have been both cumulative of and contrary to the testimony Petitioner himself gave at trial.

Likewise, Petitioner's suggestion that he was prejudiced by the delay because he was unable to use his own funds to retain counsel is not supported by any evidence in the record. Petitioner does not explain why he had to go through his savings while incarcerated. Moreover, Petitioner provides no information regarding the steps he took, if any, to attempt to retain counsel. Notably, Petitioner was already incarcerated when the prosecution initiated the AWIGHB case and remained incarcerated on separate offenses long after his sentencing on the AWIGHB conviction. In light of that fact, Petitioner cannot plausibly demonstrate that any delay in charging him was the sole cause that hindered him from hiring counsel. Indeed, Petitioner fails to explain how an

inability to hire counsel prejudiced his defense in any way, as he fails to explain how retained counsel would have provided better representation than did appointed counsel.

Petitioner offers nothing to overcome the court of appeals' conclusion that the prosecution did not delay in charging him to gain a tactical advantage. Petitioner suggests that the prosecution delayed so that Petitioner would not "gain the advantage of having a conviction run concurrent." (Pet., ECF No. 1, PageID.23.) Petitioner's claim, however, is based solely upon his rank speculation that the prosecution intentionally delayed in charging him. As noted above, the court of appeals concluded that it was highly likely that Petitioner would be sentenced on the unrelated offenses before the resolution of his AWIGHB case. Petitioner offers nothing that would lead this Court to conclude otherwise.

In sum, for the reasons set forth above, Petitioner has failed to demonstrate that the court of appeals' rejection of his claim that the prosecution violated his due process rights by delaying the decision to charge him is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to this portion of ground I.

## D.    Ground VII—Good Cause and Actual Prejudice

Petitioner's seventh and final ground for relief is simply that he has "satisfied good cause and actual prejudice." (Pet., ECF No. 1, PageID.10.) In support, Petitioner asserts that "MCR 6.500 et seq. requires a defendant to show good cause and actual prejudice for failure to raise the issues in a prior appeal." (*Id.*, PageID.54.) Petitioner suggests that he showed good cause via appellate counsel's failure "to pursue the obvious claims herein." (*Id.*) Petitioner raised this ground in his Rule 6.502 motion, and the trial court rejected it, stating that Petitioner had not demonstrated good cause because his "other legal challenges lack merit," and that Defendant "did not satisfy the high burden of demonstrating ineffectiveness of appellate counsel." (ECF No. 7-9, PageID.356.)

37

To the extent that Petitioner asserts that the state courts erred in applying the pertinent state rules governing motions for relief from judgment, he fails to state a claim for habeas relief. State courts are the final arbiters of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Accordingly, the state courts' determination that Petitioner was not entitled to post-conviction relief under state law is axiomatically correct on habeas review.

Moreover, the Sixth Circuit has explained why a state court's failure to follow its own rules regarding post-conviction proceedings raises only state law issues:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-

> conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 855 (6th Cir. 2007) (declining to revisit *Kirby* because the petitioner "ha[d] not pointed to any decision by an *en banc* court or any Supreme Court decision to undermine the logic of *Kirby*"). Accordingly, Petitioner's attack on the state courts' application of Rule 6.508(D) is not cognizable on habeas review.

Moreover, to the extent Petitioner is challenging the trial court's determination that Defendant had not satisfied his burden of demonstrating ineffective assistance of appellate counsel, that argument lacks merit. The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Petitioner appears to fault appellate counsel for not raising the claims that he asserted in his Rule 6.502 motion and that he now raises in his § 2254 petition. However, as thoroughly discussed *supra*, Petitioner's underlying grounds for relief lack merit. Thus, "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

Accordingly, for the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground VII.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full

40

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### <u>Conclusion</u>

The Court will enter a Judgment denying the petition, as well as an Order denying a certificate of appealability.

Dated:    <u>    March 31, 2025    </u>                         <u>  /s/ Jane M. Beckering              </u>
                                                              Jane M. Beckering
                                                              United States District Judge